IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATIONAL INSTITUTE FOR STRATEGIC
TECHNOLOGY ACQUISITION AND
COMMERCIALIZATION,

        Plaintiff,

 V.              No. 10-1346-SAC

NISSAN NORTH AMERICA, INC.;
NISSAN MOTOR CO. LTD.; FUJI HEAVY INDUSTRIES, LTD;
SUBARU OF AMERICA, INC.;
TOYOTA MOTOR CORPORATION;
TOYOTA MOTOR NORTH AMERICA, INC.;
TOYOTA MOTOR SALES, U.S.A. INC.;
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA, INC.;
HONDA MOTOR CO., LTD.;
HONDA NORTH AMERICA INC.; and
AMERICAN HONDA MOTOR CO., INC.,

        Defendants.

MEMORANDUM AND ORDER

This patent infringement case comes before the Court on the motion of American Honda Motor Co., Inc., joined by all remaining defendants, to transfer the case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).[1]

**Nature of the case**

This is a patent infringement case brought against non-resident automobile manufacturers, by National Institute for Strategic Technology Acquisition and

---

[1]Four original defendants (Honda Motor Co., Ltd., Honda North America, Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation) have previously been dismissed. *See* Dks. 51, 55, 56, 94. Recently served defendants have also joined the motion to transfer. *See* Dk. 105, 113.

Commercialization (NISTAC), a 501(c)(3) corporation, whose "founding derives from the State of Kansas via the Kansas Technology Enterprise Corporation, Kansas State University, the City of Manhattan, and the Manhattan Chamber of Commerce." Dk. 102, p. 4. NISTAC manages intellectual property including patents. Three patents are in-suit: U.S. Patents 5,239, 955; 5,313,919; and 5,482,637. They were developed by Ford Motor Company engineers in 1993, 1994 and 1996, and "cover inventions related to reduced friction lubricants and piston assemblies." Dk. 102, p. 5. In October of 2000, Ford Motor Company executed a donation agreement under which its wholly-owned subsidiary[2] assigned 30 patents, including the three patents-in-suit, to NISTAC's predecessor.[3] In March of 2006, NISTAC decided to include the patents-in-suit among other patents to be offered for sale via a live auction, and notified some motor companies of their availability. Ford Motor Company thereafter demanded that NISTAC withdraw certain patents from the auction, and NISTAC withdrew them, including the patents-in-suit.

In 2008, NISTAC brought a patent infringement suit involving the patents-in-suit against Ford in the Eastern District of Texas, which that court dismissed. On appeal, the Federal Circuit affirmed that NISTAC's claims were barred by the donation agreement by which Ford had assigned the patents to NISTAC. *See National Institute for Strategic Technology Acquisition and Commercialization v. Ford Motor Company*, 327 Fed.Appx. 890 (Fed. Cir. 2009). Thereafter, NISTAC filed suit in this district against other

---

[2]Ford Global is Ford's wholly owned subsidiary that manages Ford's intellectual property.

[3]NISTAC's name was then MidAmerica Commercialization Corporation.

defendants, claiming direct patent infringement, contributory patent infringement, and inducement of patent infringement. NISTAC generally contends that certain pistons used in defendants' automobiles contain a solid film lubricant (SFL) coating, infringing the patents. Defendants raise affirmative defenses and counterclaims of 1) non-infringement, and 2) invalidity of the patents for lack of enablement and failure to comply with the written description and the best mode requirements. *See* answers; Dk. 114, p. 3; Dk. 103. Defendants primarily contend in the present motion that they and/or their suppliers have ties to the Eastern District of Michigan, but no witnesses, documents, offices or facilities in the District of Kansas.

**1404(a) standard**

Under 28 U.S.C. § 1404(a), a district court may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, ... to any other district or division where it might have been brought."[4] The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992) (internal quotation marks omitted). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Id.* at 966.

This statute affords this court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991). In considering a motion

---

[4]The parties do not dispute that the Eastern District of Michigan is a district where this action "might have been brought." The Court agrees. *See* 28 U.S.C. § 1400 (b); 28 U.S.C. §1391(c). Dk. 81, p. 9. The parties disagree only as to whether transfer would be convenient for the parties and witnesses or in the interests of justice.

to transfer under § 1404(a), the court weighs the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010), quoting *Chrysler Credit Corp.*, 928 F.2d at 1516 (internal quotation marks omitted). The parties tacitly agree that this case raises no significant questions as to the enforceability of a judgment, possible conflicts of law, or the advantage of having a local court determine questions of local law. Accordingly, those factors shall not be addressed.

**Plaintiff's Choice of Forum**

The general rule is that a court usually honors a plaintiff's choice of forum "unless the balance in the defendant's favor is shown by clear and convincing evidence." *Employers Mut. Cas. Co., quoting Headrick v. Atchison, T. & S.F. Ry. Co.*, 182 F.2d 305 (10th Cir.1950).[5] A plaintiff's choice of forum is accorded "little weight," however, where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum. *Employers Mut. Cas. Co.*, 618 F.3d at 1168. Such is the case here.

"Operative facts in a patent infringement action include facts relating to the design, development, and production of a patented product."*Fuji Photo Film Co., Ltd. v.*

---

[5]*See Employers Mut. Cas. Co.*, 618 F.3d at 1167, n. 13 (discussing the validity of requiring the movant to show the balance of factors "strongly favors" a transfer).

*Lexar Media, Inc.*, 415 F.Supp.2d 370, 375 (S.D.N.Y. 2006). "In patent cases, the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced. (Citations omitted.)*" Children's Network, LLC v. PixFusion LLC*, 722 F.Supp.2d 404, 413 (S.D.N.Y. 2010). In a patent infringement suit, "as a general rule, the preferred forum is that which is the center of the accused activity," and that "will most often be where the offending device is produced." *Hitachi, Ltd. v. EMC Corp.*, 2002 WL 31098613, 3 (W.D.Okla. 2002), *quoting Acterna, L.L.C. v. Adtech, Inc.*, 129 F.Supp.2d 936, 939 (E.D.Va. 2001) (internal quotations and citations omitted);

NISTAC has failed to show that the facts relating to patent infringement have any significant connection to this district. Plaintiff contends that it is a long-time resident of this district, that it has substantial ongoing operations here, that it has chosen this venue, and that defendants profit from their sale of infringing products here. But NISTAC has shown its willingness to litigate similar claims of patent infringement outside this district, in the Eastern District of Texas. *See NISTAC v. Ford*, 327 Fed.Appx. 890 (Fed. Cir. 2009). Defendants are mass producers of automobiles whose products are sold nationally and internationally, thus the fact that some of their products are sold in this district weighs little in the venue balance. NISTAC does not allege that the patents-in-suit or the allegedly infringing products were designed, developed, or produced in this district. Because Kansas is not the exclusive or predominant locus of operative facts in this patent infringement case, the court affords plaintiff's choice of forum only minimal weight.

**Accessibility of witnesses and other sources of proof, including the**

**availability of compulsory process to insure attendance of witnesses**

Defendants contend that they have no documents located in this district relevant to this case. However, ease of access to documentary proof is not typically of much importance in patent infringement cases, because documents are usually spread over multiple states or nations.

> ... because "ease of access to source of proof ... is not typically of much importance in patent infringement cases," the court gives little weight to the location of evidence (which is spread across Indiana, Michigan, Illinois, and Tennessee). *Abbott Labs. v. Church & Dwight, Inc.*, No. 07 C 3428, 2007 WL 3120007, at *4 (N.D.Ill. Oct. 23, 2007). "No matter where the trial is held, all relevant documents-regarding both the patented invention and the allegedly infringing technology-will have to be collected, copied, and sent to the offices of [ ] counsel." *Id.* (quoting *CoolSavings.Com, Inc. v. IQ. Commerce Corp.*, 53 F.Supp.2d 1000, 1006 (N.D.Ill.1999)).

*Methode Electronics, Inc. v. Delphi Automotive Systems LLC*, 639 F.Supp.2d 903, 910 (N.D.Ill. 2009).

Greater weight is placed upon the attendance of witnesses. "The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F.Supp. 667, 669 (D.Kan.1993). The court also considers the necessity and availability of process to compel the testimony of third-arty witnesses, believing it would be unfair to force any party to present a majority of its case by deposition, if that result can be avoided.

> The availability of process to compel the testimony of witnesses is also an important factor. *Hernandez*, 761 F.Supp. at 990. The defendant argues the Kansas venue will deprive it of the availability of compulsory process to compel the attendance of many of the witnesses having knowledge of relevant events. Under Fed.R.Civ.P. 45(b)(2), the subpoena power of the court extends to places outside the district that are within 100 miles of the place of trial. ... the defendant faces a real prospect of not being able to exercise the court's compulsory subpoena power. While the defendant may present deposition testimony of unavailable witnesses, it would be unfair to force them to present a significant

portion of their case by deposition. *Farr v. Designer Phosphate and Premix Intern.,* 777 F.Supp. 895, 896 (D.Kan.1991).

*Id.* at 669.

Conclusory assertions as to the quality or materiality of the testimony of witnesses, their willingness to come to trial in this district, the inadequacy of deposition testimony, or the necessity of compulsory process are insufficient. *See e.g., Scheidt v. Klein*, 956 F.2d 963 (10th Cir. 1992). In recognition of their burden of specificity, the parties have submitted affidavits from potential witnesses.

NISTAC shows the Court four declarations, properly established under penalty of perjury pursuant to 28 U.S.C. § 1746, and summarized below.

1. Kent Glasscock, the President of NISTAC since October of 2005, states that he expects "to attend the trial." Dk. 102-1. He asserts that moving the case to the Eastern District of Michigan would increase costs for NISTAC personnel and be "extremely inconvenient" for him because of his work and personal responsibilities. Because he does not state that he anticipates testifying or has any personal knowledge about the facts in the case, his affidavit is not weighty.

2. Robert Reader, an inactive attorney, worked for NISTAC from 2000 to 2009. He was "directly responsible" for NISTAC's receipt of the patents-in-issue when donated by Ford to NISTAC, and was "directly involved in NISTAC's attempts to license and sell the Patents-at-Issue to others." Dk. 102. Those actions involved "developing marketing materials, promoting the Patents-at-Issue as available for licensing to industry, contacting companies in the industry to inform them about the Patents-at-Issue and their availability at auction through Ocean Tomo, and negotiating licenses for the

7

Patents-at-Issue." *Id.* He asserts that transfer of the case would impose a financial hardship on his company and would negatively impact his family if he is required to attend trial elsewhere. He does not state that he anticipates testifying, however. Dk. 102-2.

3.Kenneth Williams, a NISTAC employee since 2006, is currently the Director of Licensing. He states that he expects to testify concerning NISTAC's attempts to license and sell the Patents-at-Issue to others, including valuing the patents, contacting companies in the industry to inform them about the availability of the patents in the Ocean Tomo auction, and negotiating licenses for the patents. He asserts that because of his job and volunteer activities, it would be "extremely inconvenient" for him to attend trial in Michigan. Dk. 102-3.

The Court notes that because Mr. Williams is a current employee of the party, he will be available whether the trial is in Kansas or in Michigan. "[E]mployees of the parties will, as a practical matter, be available in any venue by virtue of the employment relationship". *Medien Patent Verwaltung AG v. Warner Bros. Entertainment, Inc.*, __ F.Supp.2d __, 2010 WL 4118087, 2 (S.D.N.Y 2010), *quoting Race Safe Systems, Inc. v. Indy Racing League*, 251 F.Supp.2d 1106, 1111 (W.D.N.Y. 2003). Compulsory process will not be necessary to assure his presence at trial. The same is true for Mr. Glasscock, in the event he testifies at trial.

4. Marcia Molina worked for NISTAC from August of 2001 to March of 2005. She was responsible for marketing the patents-at-issue, and "notified several companies, including some in the automotive field," about their availability. Dk. 102-4. She asserts that attending a trial in Michigan would cause both her business productivity and her

8

personal life to suffer. *Id.* She does not assert, however, that she contacted any of the defendants when trying to market the patents, or that she anticipates testifying at trial.

NISTAC additionally produces documents from two former defendants in this case to show that they consider Michigan to be no more convenient than Kansas. Dk. 102, Exhs. C, D. Upon being voluntarily dismissed from this case, the Japanese parent companies of the Honda and Toyota defendants allegedly agreed to make any potential witnesses and evidence available in Los Angeles, California (Honda) or in an unspecified "city in the U.S." (Toyota). Neither "stipulation" mentions Kansas. The cited documents are neither affidavits nor declarations under penalty of perjury, however, so the Court gives them no weight in this evidentiary analysis.

Defendants' declarations, summarized below, are all properly established under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. Deborah Greenman, Managing Counsel for Toyota Motor Engineering & Manufacturing North America, Inc. (TEMA) states that TEMA has no office or facility in Kansas, has never filed suit in Kansas, and "to the extent that TEMA identifies potential witnesses and potentially relevant documents including electronically stored information they would be primarily stored in other states" than Kansas. Dk. 84-1. TEMA's largest research facility in the United States is in the Eastern District of Michigan, and at least two companies who supply the solid lubricant coating contained in the accused Toyota pistons have a principal place of business in the Eastern District of Michigan. *Id.* This latter statement regarding suppliers weighs in favor of transfer.

2. Jerry Koyanagi is the Director, Financial Reporting, for Toyota Motor Sales, Inc. (TMS), whose principal place of business is California. He states that TMS has no

witnesses or documents relevant to this action in Kansas, has never filed suit in Kansas, and that its potential witnesses and potentially relevant documents are primarily stored in California. This statement is of little assistance to defendants, who seek to transfer the case to Michigan.

3. Erik Berkman is the Vice President of Auto Operations of American Honda Motor Co., Inc., a California corporation with its principal place of business in California. American Honda has an office in the Eastern District of Michigan. It has no offices or facilities in Kansas and no potential witnesses or documentation in Kansas related to this case. That this defendant has some unspecified type of office in the potential transferree district shows little.

4. Gary Palanjian is Vice President, Parts and Service for Subaru of America, Inc. (SOA), a New Jersey corporation having its principal place of business in New Jersey. He states that neither SOA nor its parent company, Fuji Heavy Industries, Ltd., has any office, facility, subsidiary, documents or employees in Kansas relevant to this action. SOA's affiliate, Subaru Research & Development, Inc., is in the Eastern District of Michigan. SOA's piston supplier for the model year 2006-2008 Foresters is "part of a larger corporate structure with facilities" in the Eastern District of Michigan, but no facilities in Kansas. Dk. 81, p. 6; Dk. 93 (sealed). This declaration fails to state that Subaru Research & Development, Inc. has relevant knowledge of the accused pistons or their solid film lubricant, and fails to show that SOA's piston supplier is located in Michigan. It is thus of little assistance to the court.

5. Steven Roberts is Senior Counsel, Intellectual Property for Nissan North America, Inc. (NNA), a wholly owned subsidiary of Nissan Motor Co., Ltd. (NML). NNA

10

is a California corporation with a principal place of business in Tennessee. NML is a Japanese corporation with its principal place of business in Japan. Neither of those corporations has any offices, facilities, technical operations, witnesses, or documents in Kansas relevant to this action. NNA has a division, Nissan Technical Center North America, in the Eastern District of Michigan, which is one of its principal research and development centers. Its engineers and other employees are "generally involved in the design and engineering of Nissan vehicles for the North American Market." Dk. 83, p. 2. NNA's piston supplier has its principal place of business in the Eastern District of Michigan. This latter statement weighs in favor of transfer.

NML's engineers in Japan initially designed and developed the accused pistons, but engineers in the Eastern District of Michigan currently have design responsibility for the accused pistons, and documents relating to that responsibility are located in the Eastern District of Michigan. Mr. Roberts names Richard Madden, who lives in the Eastern District of Michigan, as the manager of the group that currently has design responsibility for the relevant Titan engine. Personnel there will gather documents relevant to the design and development of the accused Nissan engine. This too, weighs in favor of transfer.

Defendants additionally assert that the four inventors of the patents-in-suit continue to live in Michigan. Because the defenses and counterclaims of invalidity and non-infringement are raised, their testimony is relevant. Because the inventors are not employees of any defendant and their testimony could not be compelled in Kansas, their residence in Michigan weighs in favor of transfer. Also, Ford, their employer at the time, is likely to have knowledge concerning the prosecution of the patents-in-suit,

11

which relates to development, procurement, and validity of the patents. Similarly, Ford's allegedly unsuccessful attempts to commercialize the patents will relate to damages. Ford is based outside Detroit, Michigan, in the Eastern District of Michigan. This also weighs in favor of transfer.

Defendants further contend that the attorney who prosecuted the patents-in-suit also continues to practice in Michigan. NISTAC counters this latter assertion by showing that the attorney who prosecuted the patents-in-suit is registered with the state bar of Michigan as "voluntary inactive," has a Florida address, and owns property in Florida. Accordingly, the Court discounts the attorney's practice in Michigan as a factor in the decision of this motion.

On balance, the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witness, favors transfer of this case to the Eastern District of Michigan.

**Cost of making the necessary proof**

In the event that this case becomes one of the very few that actually go to trial, NISTAC's witnesses would incur greater cost in the event the case is tried in Michigan, but defendants' witnesses would incur greater cost in the event the case is tried in Wichita, Kansas. NISTAC has identified, at most, only four potential witnesses, two of whom are its current employees who can be brought to trial without compulsory process. There are multiple defendants in this case, however, and their primary places of business include California, Tennessee, Kentucky, New Jersey, and Japan. They have shown the necessity of additional third-party witnesses who are not subject to

12

compulsory process, including the inventors of the patents and the suppliers of the pistons and the relevant lubricants, located in the Eastern District of Michigan. Additionally, for witnesses not living in Kansas or Michigan, travel to Detroit will likely be less expensive than travel to Wichita, whose direct air flights are limited.

**Obstacles to a fair trial**

Defendants contend that they may encounter potential juror bias in Kansas because of NISTAC's ties to Kansas State University, a large employer and a popular state college. The ability to empanel an impartial jury upon a transfer is also a "public interest factor" relevant to considering whether the transfer of a case under § 1404(a) is "in the interest of justice."

NISTAC asserts that if defendants were truly concerned about juror bias, they should have requested trial of this case in another location in this district. The Court notes, however, that any other location in this district, *i.e.,* Topeka or Kansas City, would have been closer to Kansas State University than Wichita is.

Nonetheless, defendants have failed to show actual prejudice, and federal courts presume prejudice only in the most extreme situations, none of which have been demonstrated here. *See House v. Hatch*, 527 F.3d 1010, 1025 n.14 (10th Cir. 2008), *cert. denied*,129 S.Ct.1345,173 L.Ed.2d 613 (2009); *Stafford v. Saffle*, 34 F.3d 1557, 1567 (10th Cir. 1994), *cert. denied*, 514 U.S. 1099 (1995). Here, as in most § 1404(a) transfer considerations, "[a]ny bias or prejudice a prospective juror may have ... can be determined and dealt with during voir dire." *In re Wyoming Tight Sands Antitrust Cases*, 723 F.Supp. 561, 563 (D.Kan.1988). The Court finds no obstacles to a fair trial in this district.

**Difficulties that may arise from congested dockets**

NISTAC contends that statistically speaking, the shorter time to trial and fewer filings in the District of Kansas favor keeping the case here. NISTAC states that the average time to trial is 26.2 months in the Eastern District of Michigan, and 23.1 months in Kansas. Trial itself is statistically unlikely, however. The Court finds the more relevant statistic to be the median time from filing to disposition of all cases - 9.0 months in the Eastern District of Michigan, and 9.2 months in Kansas, an insignificant difference. NISTAC additionally contends that Kansas has fewer cases per judge (329) than does the Eastern District of Michigan (373). The Court finds the more relevant statistic to be the weighted filings, however, which NISTAC concedes are similar in the two districts. Dk. 102, p.19.

Additionally, the Court finds that these type of statistics are "relatively meaningless" in the section 1404(a) analysis. *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F.Supp.2d 836, 841 (N.D.Ill. 2009). "They consist of averages for case of all types and tell the reader nothing about cases for the particular type at issue. Specifically, these statistics say nothing at all about patent infringement cases and how quickly they proceed to trial in the two districts." *Id.* In short, the Court finds no material difficulties in either venue arising from congested dockets.

**Other considerations**

NISTAC asserts that this district's local rule will expedite discovery in this case, while the Eastern District of Michigan has no similar rule.

D.Kan.Rule 26.1 states:

In civil cases other than patent infringement cases and antitrust cases,

14

the parties should complete discovery within 4 months after the case becomes at issue, or within 4 months after the court issues its Rule 16(b) scheduling order. In patent and antitrust cases, the parties should complete discovery within eight months. For good cause, the court may establish longer or shorter periods for the completion of discovery.

The impact of the rule is to permit more time than in a typical case, not less time, for discovery in patent infringement cases. Additionally, the eight month period is subject to expansion, for good cause shown. This rule merely reflects the existing practice in many districts, and has not been shown to be significantly different than the practice in the Eastern District of Michigan.[6] Accordingly, this factor does not weigh significantly in either party's favor.

Thus, the Court concludes that the balance of equities shows that defendants have met their burden of establishing that the existing forum is inconvenient, and that it would be more efficient, convenient and fair to prosecute the action in the Eastern District of Michigan.[7]

IT IS THEREFORE ORDERED that defendants' joint motion to transfer this case (Dk. 77) pursuant to 28 U.S.C. § 1404(a) is granted.

IT IS FURTHER ORDERED that the Clerk shall transfer this action forthwith to the United States District Court for the Eastern District of Michigan.

---

[6]See Eastern District of Michigan court's "Guidelines on Discovery" stating that in a standard case, discovery should close in about four or five months after it begins, and in a complex case discovery should close in about six to eight months after it begins. www.mied.uscourts.gov/Judges/practices/orderrequiringconsultation.

[7]The Court notes the pending motion to dismiss certain claims, Dk. 59, but declines to resolve it, believing it preferable for the transferee court make its own law of the case.

Dated this 15th day of March, 2011.

                                        s/ Sam A. Crow
                                        Sam A. Crow
                                        U.S. District Senior Judge